IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

NATIONAL PRODUCTS INC.,

                Plaintiff,                        OPINION AND ORDER

v.

                                                         20-cv-1108-wmc

GAMBER-JOHNSON LLC,

                Defendant.

---

In this patent lawsuit, plaintiff National Products Inc. ("NPI") alleges that defendant and counter-plaintiff Gamber-Johnson LLC ("Gamber") infringes U.S. Patent No. 9,706,026 ("the '026 patent"), which is titled "Docketing Sleeve With Electrical Adapter." Currently pending before the court is NPI's motion to dismiss Gamber's counterclaim for inequitable conduct. (Dkt. #19.) Having reviewed the briefs and the relevant case law, the court will deny that motion.

BACKGROUND

On December 15, 2020, NPI filed its complaint alleging infringement of the '026 patent. That patent discloses "a docking cradle for an accessory device, such as, for example, a cellular phone, phablet, tablet, laptop, radar detector, handheld device, or the like." ('026 patent (dkt. #1-1).) The '026 patent was filed on November 9, 2015, identifying Jeffrey D. Carnevali as the sole inventor and NPI as the sole assignee. (*Id.*)

NPI alleges that Gamber has directly infringed *at least* Claim 10 of the '026 patent. Claim 10 states:

        A docking system, comprising:
        a) a protective cover for an electronic device, the cover

> comprising a shell forming an interior cavity to receive the electronic device, a male plug comprising a plurality of connectors extending into the interior cavity of the shell in an arrangement for mating with a female Socket of the device, and a contactor comprising a plurality of contacts adjacent to an exterior of the shell and electrically coupled to one or more of the connectors of the plug, wherein the cover is configured and arranged to extend over at least a portion of a back Surface, a front surface, and each of four side surfaces of the electronic device to hold the electronic device within the cover; and
>
> b) a docking cradle configured to receive the cover and comprising a base receiver to receive the cover and a docking connector disposed on the base receiver and comprising a plurality of contacts positioned to connect with one or more of the plurality of contacts of the contactor of the protective cover, the docking connector defining a rim to guide proper mating of the contactor to the docking connector.

('026 patent (dkt. #1-1) 33:5-25.)

NPI alleges that Gamber infringed Claim 10 by selling and offering to sell powered Cradles and Docking Stations used with Zebra ET50/51 and/or ET55/56 enterprise tablets with the rugged frame option. According to NPI, Gamber's docking stations meet each element of Claim 10; hence, the stations infringe the '026 patent. (*See* Compl. (dkt. #1) ¶¶ 14-21.) In its answer, Gamber disputes infringement and affirmatively alleges that the '026 patent is unenforceable due to NPI's inequitable conduct. (Answ. & Counterclaims (dkt. #18) ¶¶ 10-56.)[1]

Gamber's counterclaims rely on a similar, unenforceability pleading filed by Innovative Intelligent Products, LLC d/b/a GPS Lockbox ("GPS") against NPI's '026

---

[1] Unless otherwise noted, citations are to paragraph numbers under the heading "Counterclaims," beginning on page ten of the answer and counterclaims.

patent in the Western District of Washington. (*Id.* ¶ 30.) Specifically, Gamber claims that GPS's representatives met with senior executives from NPI in early 2014 *before* the priority date of the '026 patent, and that during this meeting, GPS showed its Ultra Pro 7 product to NPI's representatives. (*Id.*) GPS's Ultra Pro 7 allegedly includes a magnetic system component called "the Magtron," which a South Korean company, Dae Han, introduced at an even earlier trade show. As alleged in Gamber's counterclaim, the Magtron component features the magnetic connection system that NPI later claimed in their '026 patent application. (*Id.* ¶¶ 15-20.) Gamber further alleges that NPI committed inequitable conduct by misrepresenting to the United States Patent and Trademark Office (the "USPTO") that Carnevali is the sole inventor of the magnetic connection system and by intentionally failing to disclose this material information regarding the prior art product. (*Id.*)

OPINION

A motion to dismiss does not test the merits of a pleading, but rather the sufficiency of its allegations. *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014). Dismissal of a claim under Federal Rule of Civil Procedure 12(b)(6) is warranted only when the pleading "fails to allege enough facts to raise a reasonable expectation that discovery will reveal evidence supporting [those] allegations." *Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 749 F. Supp. 2d 892, 901 (W.D. Wis. 2010). Where, as here, a party makes an allegation of fraud on the USPTO, Rule 9(b) of the Federal Rules of Civil Procedure also requires dismissal if the claim is not pleaded with sufficient factual

3

particularity. *Id.*; *see also Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1318 (Fed. Cir. 2009).

To establish that a patent is unenforceable because of inequitable conduct, the challenger must prove "by clear and convincing evidence" that an individual associated with the filing and prosecution of the application: (1) made an affirmative misrepresentation of material fact, failed to disclose material information or submitted false material information; and (2) intended to deceive the USPTO. *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008). To plead these underlying facts with sufficient particularity, a party must identify "the specific who, what, when, where, and how of the material misrepresentation or omission." *Exergen*, 575 F.3d at 1327 (citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).

The materiality required to establish inequitable conduct is a "but-for" materiality. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011). But-for material information is one that would prevent the issuance of at least one claim of the patent had the Examiner been aware of it. *Id*. "[P]rior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Id*. More specifically, the Federal Circuit has held that to satisfy the heightened pleading requirements of Rule 9(b), "the pleading must identify which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found." *Exergen*, 575 F.3d at 1329; *see also, e.g., Milwaukee Elec. Tool Corp. v. Hitachi Koki Co.*, No. 09–C–948, 2012 WL 1952977, at *7 (E.D. Wis. May 29, 2012) (dismissing inequitable conduct allegations where the "Invalidity Contentions" for

4

the patents-in-suit did "not sufficiently explain where in each item of prior art the elements of the claims are found"). "Pleading on 'information and belief' is permitted under Rule 9(b) when essential information lies uniquely within the other party's control, but only if the pleading sets forth the specific facts upon which the belief is reasonably based." *Exergen*, 575 F.3d at 1330.

On its face, defendant Gamber's inequitable counterclaims would appear to meet all of these pleading requirements. However, plaintiff raises three arguments as why the court should grant its motion to dismiss: (1) they are based on "information and belief," merely relying on GPS's counterclaims against NPI in a separate lawsuit (Pl.'s Mot. (dkt. #19) 4-8); (2) they fail to meet the "who, what, when, where, and how" standard (*id.* at 3-6); and (3) in particular, they fail to allege *how* the potential prior art is "material," rather than "cumulative," or adequately challenge plaintiff's intent (Pl.'s Reply (dkt. #24) 3). While unpersuaded by any of these three arguments, the court addresses them in turn below.

I. "Information and Belief" Pleadings under Rule 9

Plaintiff argues that defendant's counterclaims are facially deficient because they are based on "information and belief," having been adopted from GPS's pleadings against NPI in another case. (Pl.'s Opening Br. (dkt. #19) 2-6.) As discussed earlier, however, allegations of fraud *can* be based on "information and belief" as to matters within an *opposing party's knowledge*. *Exergen*, 575 F.3d at 1330. In this case, the detailed facts regarding plaintiff's meeting with GPS's agents and its awareness of the Magtron device unquestionably lie within NPI's knowledge and reliance on GPS's recitation of those facts

5

in a legal proceeding is perfectly appropriate given its obligation and that of its counsel to only allege such facts in good faith. Thus, defendant's inequitable conduct allegations pleaded on "information and belief" in the accuracy of GPS's pleading are sufficient provided they satisfy the heightened pleading requirements set forth above.

**II. The "Who, What, When, Where and How" Standard**

Reviewing defendant's counterclaims, the court easily concludes that it has sufficiently alleged the existence of material omissions by plaintiff during its prosecution of the '026 patent before the USPTO to satisfy the heightened particularity requirements of Rule 9. Indeed, consistent with *Exergen*, defendant sufficiently alleges that plaintiff's agents (who) were made aware of potential prior art -- the Magtron magnetic connection system device (what) -- during their meeting with GPS's representatives (who and where) in February 2014 (when). (Counterclaims (dkt. #18) ¶¶ 10-56.) Accordingly, in its reply, plaintiff essentially concedes that the who, what, where and when elements are all satisfied. (Pl.'s Reply (dkt. #24) 3.) Instead, plaintiff argues there is a missing communication link between the plaintiff's agents who attended the meeting and the '026 patent's inventor Carnevali and his prosecution agents, the "how." Such detailed facts are not required at the pleading stage, even under Rule 9(b), given the court's obligation to draw reasonable inferences at this stage of the case -- that Carnevali could have been aware of the prior art products through communications with NPI's agents. Only discovery will reveal evidence or its absence supporting this inference. *See Semiconductor Energy Lab. Co.*, 749 F. Supp. 2d at 901 (dismissal warranted when a party ""fails to allege enough facts to raise a reasonable expectation that discovery will reveal evidence supporting [those] allegations").

6

Moreover, plaintiff ignores defendant's further allegation that GPS disclosed a product which is "identical" to the '026 patent's magnetic connection system. (Counterclaims (dkt. #18) ¶ 42.) These allegations especially satisfy the level of particularity required to plead inequitable conduct premised on the failure to disclose prior art, since defendant has identified (1) the particular claim limitations, or combination of limitations, supposedly absent from the record before the patent examiner,[2] and (2) the specific material disclosure of GPS's product. (*See* Counterclaims (dkt. #18) ¶¶ 11-48.) Thus, with identifying the specific material disclosure of the Ultra Pro 7 product to the inventor or his prosecuting agents, defendant's counterclaims also sufficiently describe "how" the examiner would have used this information to invalidate the particular claims of the '026 patent (claims 8, 9, and 20.) (*See id.* ¶¶ 59-62.)[3]

---

[2] In its counterclaims, defendant contends that at least claims 8, 9, and 20 of the '026 patent are limited by the prior art disclosed in the Magtron system, which is a component of the Ultra Pro 7 product disclosed to plaintiff's representative before the priority date of the '026 patent application. (*See* Counterclaims (dkt. #18) ¶ 49.) Paragraphs 11-53 provide factual content to support the inequitable conduct defense in detail to cover each and every claim limitation in the '026 patent. For example, there is reference to claims 8, 9, and 20 that include the magnetic connecting system. ('026 patent (dkt. #1-1).) Certainly, the allegations at paragraphs 11-53 get defendant over the line at this juncture in asserting facts appearing to demonstrate that the Ultra Pro 7 "by itself" would prevent allowance of the '026 patent.

[3] This court is cognizant that when last presented with a motion to dismiss an inequitable conduct claim, it granted the motion. *See Wis. Alumni Research Found. v. Apple Inc.*, No. 2014 WL 7217770 (W.D. Wis. Dec. 17, 2014). In that case, however, the court concluded that Apple failed to identify: (1) the particular claim limitations or combination of limitations allegedly absent from the record before the examiner; and (2) the specific material, non-cumulative disclosures in the alleged prior art. *Id.* at *4 ("Without identifying all of the specific, material disclosures in the [alleged prior art patent] and where they are found, there is obviously little chance for the court to discern "how" the Examiner would have used [that patent] to invalidate the particular claims of the '752 patent."). For the reasons explained above, neither is true here.

Whether its inequitable conduct claims will survive a motion for summary judgment remains to be seen, but defendant has alleged facts sufficient to meet the heightened requirements of Rule 9(b) at the pleading stage.

### III. Elements of the "inequitable conduct"

Finally, defendant also sufficiently pleaded the required elements of materiality and intentionality for purposes of its inequitable conduct claims.

#### A. The "material," "non-cumulative" prior art pleading

Gamber's pleading of materiality is sufficient both generally and with respect to the specific prior art references. A patentee who withholds material information intentionally from the USPTO engages in inequitable conduct. *Helsinn Healthcare S.A. v. Teva Pharm. USA, Inc.*, 139 S. Ct. 628, 631 (2019). Information is material to patentability when "[i]t establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim." 37 C.F.R. § 1.56(b)(1). A product is unpatentable if it lacks novelty. *See Karsten Mfg. Corp. v. Cleveland Golf Co.*, 242 F.3d 1376, 1383 (Fed. Cir. 2001). Since a product is "anticipated" if it is not new, it naturally follows that an anticipatory reference will almost always be material.

Under *Exergen*, to state an inequitable conduct claim, a defendant must also allege why the withheld information is not cumulative. 575 F.3d at 1329–30. However, at least as the pleading stage, a truly anticipatory reference is almost never cumulative to other references because the patent examiner must analyze each anticipatory reference separately to determine if it invalidates a claim. *See Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331,

8

1339 (Fed. Cir. 2003) ("A determination that a claim is invalid as being anticipated or lacking novelty under 35 U.S.C. § 102 requires a finding that 'each and every limitation is found either expressly or inherently in a *single* prior art reference.'") (citing *Celeritas Techs. Inc. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1360 (Fed. Cir. 1998)).

Nevertheless, in its reply brief, plaintiff argues that the Magtron product is both "cumulative" and not "material" prior art, and thus, did not need to be disclosed to the PTO. (Pl.'s Reply (dkt. #24) 3.) Specifically, plaintiff suggests that the Magtron magnetic communication system is cumulative of the 8,970,332 patent reference, titled "Electromagnetic connector for electronic device," that NPI *did* disclose to the PTO during prosecution of the '026 patent. (*Id.*) However, defendant argues that the Magtron device is "identical" to the patent in suit's claims and, hence, anticipatory. To the extent that defendant has alleged that plaintiff failed to disclose an anticipatory reference to the patent examiner and charted how the reference anticipates the asserted claims of the '026 patent, therefore, it has adequately alleged why the withheld reference is material and not cumulative. Accordingly, to require Gamber to restate how the anticipatory reference is not cumulative because it anticipates the asserted claims of the patent in suit, would itself be cumulative. As such, identifying the specific prior art reference that was in public use or sale in this country and the specific patent claims limitations by such prior art render defendant's allegations of materiality sufficient, at least at the pleading stage.

B. Deceptive Intent

Under *Exergen,* to plead scienter adequately, a party must allege sufficient facts to infer actual knowledge of "*specific information . . .* that is alleged to be material to the claims"

9

of the patent in suit. *Exergen*, 575 F.3d at 1330 (emphasis added). Thus, the proponent of the inequitable conduct theory need only plead facts supporting a reasonable inference that a specific individual knew of the misrepresentation and had the specific intent to deceive the USPTO. *Id* at 1328-29. "A reasonable inference is one that is plausible and that flows logically from the facts alleged." *Id.* at 1329.

Unlike in *Exergen*, where the pleading simply alleged that the plaintiff was aware of two, prior patents but provided no additional facts to infer that any individual knowingly withheld material information, defendant has alleged sufficient facts to create a reasonable inference of scienter. Gamber has claimed that before the prosecution of the '026 patent, at least two of plaintiff's employees knew of the Magtron. Defendant has also alleged that this prior art was "identical" to the '026 patent, yet was not disclosed to the patent examiner. For reasons already discussed, these allegations are sufficient to support a reasonable inference at the pleading stage that the references were withheld deliberately in order to deceive the USPTO.

ORDER

IT IS ORDERED that plaintiff National Product Inc.'s motion to dismiss the inequitable defense counterclaim (dkt. #19) is DENIED.

Entered this 16th day of June, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge